UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DESMOND EASLEY and
SHOSHAWNA KIRKENDOLL,
    Plaintiffs,

v.                                Case No. 18-C-1803

SALLY BEAUTY SUPPLY LLC,
    Defendant.

## DECISION AND ORDER

Plaintiffs Desmond Easley and Shoshawna Kirkendoll allege claims against defendant Sally Beauty Supply LLC under 42 U.S.C. § 1981. Before me now is Sally Beauty's motion for summary judgment.

### I. BACKGROUND

Desmond Easley is a 58-year-old African American male. Shoshawna Kirkendoll is a 41-year-old African American female. In early March, they and their eight-year-old daughter visited a Sally Beauty Supply store in Milwaukee, Wisconsin. The store was small and had only three isles. During the visit, a store employee assisted Easley and Kirkendoll in locating merchandise. Kirkendoll purchased some items, but Easley did not because the store did not have what he wanted.

The plaintiffs and their daughter returned to the same Sally Beauty Supply store on the afternoon of March 8, 2017. They shopped for about 25 or 30 minutes. During this visit, the plaintiffs believed that store employees, who were Caucasian, were observing them closely. Easley overheard a store employee whisper, "watch them, watch them." ECF No. 25-5 at 11 (Deposition page 23). One employee approached Kirkendoll multiple

times and asked her if she was "okay." ECF 25-6 at 8 (Deposition page 14). The plaintiffs believed that, at one point, a security guard came near them and pretended to shop. While the plaintiffs were in the store, all the other customers were Caucasian, and the plaintiffs did not observe store employees monitoring the Caucasian shoppers as closely as they monitored them. When the plaintiffs finished shopping, Kirkendoll purchased the products she wanted. Easley did not attempt to purchase anything.

On March 9, 2017 (or possibly a few days later), the plaintiffs returned to the Sally Beauty Supply store to complain about how they were treated during their prior visit. They encountered an employee whom they did not remember seeing during the prior visit and asked this employee to give them the store manager's number. The employee told the plaintiffs that she could not give out the manager's number, but that she could take the plaintiffs' number and have the store manager call them. Easley did not find this offer acceptable and demanded the store manger's number. Easley thought that the employee was being rude. He and Kirkendoll remained in the store for 15 or 20 minutes and continued to demand the manager's number. The employee eventually told Easley to leave the store, and he said that he did not have to. The employee called security, but Easley and Kirkendoll left the store before security arrived.

Based on their belief that Sally Beauty treated them differently because of their race, the plaintiffs commenced this suit under 42 U.S.C. § 1981, which prohibits racial discrimination in the making and enforcement of contracts. Sally Beauty moves for summary judgment.

## II. DISCUSSION

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

To establish a claim under § 1981, the plaintiffs must show that (1) they are members of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the making and enforcing of a contract). *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). Litigation involving § 1981 most commonly involves the right to make and enforce contracts of employment. *Id.* However, claims under § 1981 occasionally arise out of a plaintiff's experience shopping at a retail store. *See id.* Importantly, though, § 1981 does not provide a general remedy for all racial discrimination that may occur in a retail setting. *See Kinnon v. Arcoub, Gopman & Associates, Inc.*, 490 F.3d 886, 892 (11th Cir. 2007) ("Section 1981 does not provide a general cause of action for all racial harassment that occurs during the contracting process."); *Arguello v. Conoco, Inc.*, 330 f.3d 355, 358 (5th Cir. 2003) ("Section 1981 does not provide a general cause of action for race discrimination."); *Garrett v. Tandy Corp.*, 295 F.3d 94, 100 (1st Cir. 2002) ("The legislative history of the 1991 amendment makes it crystal clear that Congress did not intend to convert section 1981 into a general prohibition against race discrimination."); *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001) ("Section 1981 does not provide a general cause of action for race discrimination.");

3

*Hampton v. Dillard Dept. Stores, Inc.*, 247 F.3d 1091 (10th Cir. 2001) (observing that § 1981 does not protect "the mere expectation of being treated without discrimination while shopping").

In the present case, the plaintiffs are members of a racial minority and therefore have satisfied the first element of a claim under § 1981. I will assume for purposes of summary judgment that the plaintiffs' testimony that they were being watched more closely than Caucasian customers creates a genuine dispute over whether Sally Beauty intended to discriminate against them during their shopping trip on March 8, 2017.[1] As explained below, the problem for the plaintiffs is the third element—they have not shown that the discrimination concerned the making or enforcement of a contract.

The Seventh Circuit has held that, in the retail setting, to show that discrimination involved the making or enforcement of a contract, the plaintiffs must show that store employees denied them admittance or service or otherwise prevented them from purchasing goods or services because of their race. *See Morris*, 89 F.3d at 414–15. In *Morris*, the plaintiffs were not denied admittance or service and were allowed to purchase items, but store employees believed that the plaintiffs were shoplifters and called the police. The Seventh Circuit held that, even if the store's action in calling the police was the product of racial discrimination, it would not amount to a violation of § 1981 because nothing the store did prevented the plaintiffs from making purchases.

---

[1] The plaintiffs do not claim that Sally Beauty committed a separate violation of § 1981 during their subsequent trip to the store to ask for the store manager's number. Thus, I do not discuss whether the store's refusal to provide the manager's number was discriminatory other than to note that the plaintiffs have not produced evidence suggesting that it was.

4

In the present case, the plaintiffs do not claim that Sally Beauty denied them admittance or service or prevented them from purchasing whatever items they wished to purchase from the store. Instead, they contend that employees watched them closely to prevent theft. This case is therefore indistinguishable from *Morris*. In both cases, the discriminatory act was assuming that members of a racial minority were more likely to be shoplifters. Indeed, the store's action in *Morris* was arguably more degrading than Sally Beauty's alleged conduct here, for in *Morris* the store called the police while Sally Beauty only kept an eye on the plaintiffs and did not intervene in their shopping experience.

The plaintiffs contend that *Morris* was wrongly decided and urge me to rely on a case decided by the Sixth Circuit, *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001), which, the plaintiffs claim, holds that plaintiffs can establish a prima facie case of discrimination under § 1981 by showing that they "received services in a markedly hostile manner." However, I am bound by Seventh Circuit cases and could not depart from *Morris* even if I agreed with the plaintiffs that it was wrongly decided. *See Donohoe v. Consol. Operating & Prod. Corp.*, 30 F.3d 907, 910 (7th Cir. 1994).

In any event, *Christian* does not aid the plaintiffs. That case involved the second element of a claim under § 1981 (intent to discriminate) rather than the third (whether the plaintiffs were denied their right to make and enforce contracts). The Sixth Circuit's "markedly hostile" test allows plaintiffs to establish a prima facie case that the defendant intended to discriminate against them by showing that the defendant's employees treated the plaintiffs in a markedly hostile manner. *See Christian*, 252 F.3d at 872. But *Christian* does not hold that receiving services in a markedly hostile manner is sufficient to establish a claim under § 1981. Instead, *Christian* recognizes that the plaintiffs must also show that

they were either asked to leave the store before completing purchases, refused services, or refused access to the store. *Id.* at 873.

In *Christian*, the third element was clearly satisfied because the defendant had required the plaintiffs to leave its store before they could complete their purchases. 252 F.3d at 864, 866. Indeed, the Sixth Circuit expressly noted that the case involved "none of the difficulties that other courts have encountered in determining whether there was a valid contract interest at stake." *Id.* at 874. The court then pointed to cases from the Seventh Circuit, including *Morris*, as examples of those that involved the difficulty of determining whether there was a valid contract interest at stake. *See id.* Thus, the Sixth Circuit has not adopted a different approach to the make-and-enforce-contracts element of a § 1981 claim than has the Seventh Circuit.

Finally, even if receiving services in a markedly hostile manner could satisfy the third element of a § 1981 claim, the plaintiffs still would not survive summary judgment. The Sixth Circuit has identified several "factors" that are relevant to determining whether the plaintiff received services in a markedly hostile manner. These include "whether the conduct is (1) so profoundly contrary to the manifest financial interests of the merchant and/or her employees; (2) so far outside of widely-accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination." *Christian*, 252 F.3d at 871.[2] Here, the plaintiffs allege that employees of Sally Beauty

---

[2] Note that the way the Sixth Circuit described these factors highlights that they are designed to address the second element of a § 1981 claim rather than the third: the factors are designed to determine whether the defendant's conduct "supports a rational inference of discrimination," not whether the defendant impaired the plaintiff's right to make and enforce contracts.

6

watched them closely to prevent shoplifting. They do not allege that the employees accused them of shoplifting, called the police, or used racial slurs or insulting language. Obviously, preventing shoplifting is part of the ordinary business of retail stores, and thus the employees' conduct was not profoundly contrary to the manifest financial interests of Sally Beauty, was not outside of widely-accepted business norms, and was not arbitrary on its face.

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Sally Beauty's motion for summary judgment is **GRANTED**. The Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this 21st day of October, 2020.

s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge
